# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ELAINE ANNETTE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION,** |
| v. | ) **ORDER, AND** |
| | ) **RECOMMENDATION** |
| BULLHEAD INVESTMENTS, LLC, | ) |
| and BROCK & SCOTT, PLLC, | ) 1:09CV639 |
| | ) |
| Defendants. | ) |

This matter is before the court on Defendants' motion to dismiss the amended verified complaint (docket no. 17) and on Defendants' alternative motion to strike various paragraphs in the amended verified complaint (docket no. 19).[1] Plaintiff has responded in opposition to the motions and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Thus, the motion to dismiss must be dealt with by way of recommendation. For the reasons set forth below, Defendants' motion to strike will be denied. Furthermore, it will be recommended that the court deny Defendants' motion to dismiss.

## I. Facts

The following facts are taken as true for the purpose of the pending motion to dismiss:

---

[1] I will refer hereinafter to the amended verified complaint simply as the amended complaint.

Plaintiff's full name is Elaine Annette Johnson. (Am. Compl. ¶ 5, docket no. 10.) For several years, Plaintiff has been subject to collection activity against a person unknown to her named "Elaine E. Johnson." (*Id.* ¶ 18.) Plaintiff has repeatedly informed debt collectors that she is not Elaine E. Johnson and that her given name is Elaine Annette Johnson. (*Id.*) On or about April 29, 2009, Plaintiff received a letter from the Defendant law firm Brock & Scott, PLLC, representing Defendant Bullhead Investments, LLC, on a collection matter.[2] (*Id.* ¶ 19 & Ex. A.) The letter that Plaintiff received was addressed to "Elaine E. Johnson" at Plaintiff's residential address in Durham, North Carolina. (*Id.*) The letter referenced a debt owed by Elaine E. Johnson to Bullhead Investments, with the original creditor being First USA Bank, N.A. (*Id.*) Plaintiff has never had an account with First USA Bank, N.A. (*Id.* ¶ 20.)

Plaintiff contacted Defendant Brock & Scott regarding the letter and spoke with one of its employees, Melissa Brown. (*Id.* ¶ 21.) Plaintiff explained to Brown that she was not Elaine E. Johnson. (*Id.*) Plaintiff further told Brown that she (Plaintiff) had been subject to many collection activities regarding a person named Elaine E. Johnson. (*Id.* ¶ 22.) At that point, Brown asked Plaintiff to confirm her social security number to see if it matched the social security number of the person owing

---

[2] Plaintiff alleges upon information and belief that Defendant Bullhead Investments has as its sole members the same two named partners of Defendant law firm Brock & Scott, and that Bullhead Investments is in the business of purchasing defaulted debt. (*Id.* ¶¶ 7-15.)

the debt.  (*See id*. ¶ 23.)  Brown confirmed that Plaintiff's social security number differed from the number associated with the alleged debtor Elaine E. Johnson.  (*Id.* ¶ 24.)  Brown then told Plaintiff that she would remove Plaintiff from the mailing list.  (*Id.* ¶ 25.)  Plaintiff assumed that the matter had been resolved.  (*Id.* ¶ 26.)

Several months later, on around July 13, 2009, Plaintiff was served with a summons and complaint, filed on July 8, 2009, by Defendant Brock & Scott, as counsel for Bullhead Investments.  (*Id.* ¶ 27 & Ex. B.)  The summons and complaint were directed to "Elaine E. Johnson," but they were served at Plaintiff's residential address and sought to collect on the same alleged debt referenced in the prior letter from Brock & Scott.  (*See id.* ¶¶ 27-28.)  Furthermore, the court cover sheet and an "Affidavit of Defaulted Account," which were both attached to the summons and complaint, also associated the alleged debtor with Plaintiff's residential address.  (*Id.* ¶ 29 & Ex. B.)

A sheriff's deputy left a copy of the summons and complaint with Plaintiff's elderly mother at Plaintiff's residence.  (*Id.* ¶ 30.)  Plaintiff alleges that if Plaintiff had been present when the summons and complaint were served, she would have refused service, and she would have shown the deputy her identification to prove that she was not Elaine E. Johnson.  (*Id.*)  Plaintiff thereafter called Brock & Scott and explained to them again that she was not the alleged debtor Elaine E. Johnson and that she had a different social security number.  (*Id.* ¶ 31.)  During this conversation, an employee of Brock & Scott told Plaintiff that the alleged debt had

originated in Ohio in 2002. (*Id.* ¶ 32.) Plaintiff informed the Brock & Scott employee that she had not lived in Ohio in 2002, nor had she ever resided at the address from which the alleged debt had originated. (*Id.* ¶ 33.)

The Brock & Scott employee then told Plaintiff that she would have to prove that she was not the alleged debtor Elaine E. Johnson by filing a fraud alert. (*See id.* ¶ 34.) Because Plaintiff was unaware of any fraud and did not believe any fraud had occurred, she was unwilling to swear out and submit a false affidavit as Defendants demanded.[3] (*See id.* ¶¶ 35-36.) Plaintiff then sought legal counsel because she was afraid of being held liable for the legal debts of Elaine E. Johnson. (*See id.* ¶¶ 37-38.) Plaintiff's counsel entered an appearance in the state court action and obtained summary judgment dismissing any potential claims as to Plaintiff on the basis that she is a different person from Elaine E. Johnson. (*Id.*)

Plaintiff contends that all of the above-alleged conduct by Defendants constitutes violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. More specifically, Plaintiff alleges that Defendants violated the following provisions of the FDCPA: 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f. Section 1692e generally prohibits a debt collector from making "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." Sections 1692e(2)(A) and 1692e(10), in turn, give examples of conduct

---

[3] In other words, no debts attributed to Elaine E. Johnson have ever appeared on Plaintiff's credit report.

4

that violates Section 1692e. Section 1692e(2)(A) prohibits false representations about "the character, amount, or legal status of any debt." Section 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." Finally, Section 1692f prohibits and defines various "unfair or unconscionable means to collect or attempt to collect any debt." *See* 15 U.S.C. §§ 1692e-1692f.

In addition, Plaintiff alleges that Defendants also violated the FDCPA by filing the state court lawsuit at a time when the three-year statute of limitations had already run on the alleged debt owed by Elaine E. Johnson.[4] (*See* Amended Compl. ¶¶ 39-50.) Plaintiff alleges that as a result of Defendants' actions, Plaintiff has suffered damages in the form of stress, anxiety, inconvenience, missed work, and attorney's fees accrued in the process of her proving her identity and non-liability to Defendants in the state court lawsuit. (*See id.* ¶ 51.)

## II. Defendants' Alternative Motion to Strike Various Paragraphs in Plaintiff's Amended Complaint

As an alternative to the motion to dismiss, Defendants have moved to strike various paragraphs in Plaintiff's amended complaint on the grounds that the

---

[4] Numerous courts have held that bringing legal action to collect a debt that is time-barred is an abusive debt collection practice under the FDCPA. *See Castro v. Collecto, Inc.*, No. EP-08-CA-215-FM, 2009 WL 3617557, at *8 & n.52 (W.D. Tex. Oct. 27, 2009) (collecting cases). It should also be noted that, effective October 1, 2009, North Carolina law prohibits debt buyers from filing or threatening to file suit when the collection of a debt is time-barred. *See* N.C. GEN. STAT. § 58-70-115 (2009).

allegations are immaterial because they relate to injuries allegedly suffered by Elaine E. Johnson, who is not a party to this lawsuit. More specifically, in paragraphs 32, 39-44, and 46-50, Plaintiff alleges various factual allegations that, according to Plaintiff, show that Defendants knew or should have known when they filed the state court action against Elaine E. Johnson that the statute of limitations had run as to Elaine E. Johnson's debt. Plaintiff also asserts factual allegations regarding alleged misstatements by Defendants in the state court complaint.[5] Defendants contend that these allegations should be stricken because Plaintiff is attempting to state a claim for a violation of the FDCPA that properly belongs to Elaine E. Johnson, that none of these allegations are relevant to any harms allegedly suffered by Plaintiff, and that Plaintiff included these allegations solely to prejudice the court against Defendants. In response, Plaintiff contends that the allegations in paragraphs 32, 39-44, and 46-50 are directly material and pertinent to her claims of injury under the FDCPA. Plaintiff contends that Defendants' actions directly impacted Plaintiff in that if Defendants had not filed a time-barred complaint, they would never have associated Plaintiff's residential address with the alleged debtor in the complaint and summons, and Plaintiff would not have been forced to hire an attorney to assist her in asserting her non-liability on the alleged debt.

---

[5] For instance, Plaintiff alleges that the state court action filed by Defendants contained false allegations of non-payment and a prayer for judgment for four months of interest that was not legally owed by the debtor Elaine E. Johnson. (*Id.* ¶ 50.)

Federal Rule of Civil Procedure 12(f) gives the court discretion to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See* FED. R. CIV. P. 12(f). Motions to strike pursuant to Rule 12(f) are strictly construed and are generally viewed with disfavor. *Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 560 (M.D.N.C. 1999); *see also Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Given that Rule 12(f) motions are generally viewed with disfavor, I will deny the motion to strike and allow the allegations to remain past the motion to dismiss stage.

**III. Standard of Review**

<u>Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure</u>

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme

7

Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

## IV. Analysis

Defendants have moved for dismissal of Plaintiff's claim against Defendants under the FDCPA on the grounds that she has failed to state a claim for a violation of the FDCPA.[6] Defendants do not dispute that they are debt collectors within the meaning of the FDCPA. Defendants contend, however, that none of their actions constituted any of the activities prohibited under the FDCPA. Defendants further contend that Plaintiff lacks standing to sue under the FDCPA because Plaintiff complains of communications by Defendants allegedly directed towards Elaine E. Johnson and because Plaintiff could not have reasonably believed that Defendants were alleging that she was obligated to pay the debt of Elaine E. Johnson. For the following reasons, I find that Plaintiff has shown that she has standing to pursue her FDCPA claim against Defendants and that she has stated a claim against Defendants for violations of the FDCPA.

---

[6] Defendants characterize their motion to dismiss as one asserting a failure to state a claim, but they also argue in their Reply brief that Plaintiff lacks standing to sue. Indeed, the issues of standing and the merits are intertwined in this case.

A party seeking to invoke federal court jurisdiction must present an actual case or controversy. *See* U.S. CONST. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III," and Plaintiff has the burden of proving that she has standing to bring a claim under the FDCPA. *See id.* at 560-61. The first issue for this court is to determine what individuals have standing to sue under the FDCPA. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Certain substantive provisions of the FDCPA only address the rights of "consumers," which the FDCPA defines as "any natural person obligated or allegedly obligated to pay any debt," *id*. § 1692a(3). Other substantive protections in the FDCPA, however, are not limited to "consumers." For example, Section 1692k(a), the section allowing for private actions against debt collectors, provides that "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to *any person* is liable to such person." *Id*. § 1692k(a) (emphasis added).

Because the plain language of Section 1692k does not limit recovery to "consumers," courts have recognized that under certain circumstances, third-party, non-debtors may have standing to bring claims under the FDCPA. For example, courts have found standing to sue in cases where a person who was not alleged to

be the debtor was nonetheless harassed by a debt collection agency in its attempts to track down a debtor. *See Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, 1298 (E.D. Mo. 2008); *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 504 n.9 (S.D.N.Y. 2000); *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1174-75 (W.D. Wis. 1996); *Dutton v. Wolhar*, 809 F. Supp. 1130, 1134-35 (D. Del. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 175 (W.D.N.Y. 1988); *Whatley v. Universal Collection Bureau Inc. (Fla.)*, 525 F. Supp. 1204, 1205-06 (N.D. Ga. 1981).

Defendants contend that Plaintiff has shown no injury because the communications sent from Defendants were clearly not directed to Plaintiff. Defendants further suggest that Plaintiff did not need to hire an attorney to make an appearance on her behalf in the state court lawsuit because it was clear that she was not the true debtor. In considering whether there was an FDCPA violation, courts apply the "least sophisticated consumer" standard "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996); *Talbott v. GC Servs. Ltd. P'ship*, 53 F. Supp. 2d 846, 850 (W.D. Va. 1999). Applying the least sophisticated consumer test to the facts here, a plaintiff who is served with a summons at her residential address directed to a person with almost the same exact name, after the plaintiff has already informed the debt collector that she is not the true debtor, could reasonably assume that the debt collector was still trying to hold her liable for the

10

alleged debt and therefore deem it necessary to obtain an attorney to resolve the matter. In other words, when a debt collection agency continues to hound a consumer even after she has provided them with clear proof that she is not the true debtor, and when it files a lawsuit that is served at her residential address, an unsophisticated consumer would reasonably believe that the collector is still trying to make her liable for the debt. Indeed, here Plaintiff was obviously concerned enough about her own potential liability that she hired an attorney to make sure that she would not be held liable for the debt of Elaine E. Johnson. To this extent, Plaintiff's allegations do not show, as Defendants contend, that Plaintiff was certain that she could not be held liable for the debt of Elaine E. Johnson. Moreover, Plaintiff was not required to wait to take action until after a judgment was rendered and risk being subject to further communications, harassment, or even a possible levy against her property. In sum, Plaintiff has alleged sufficient facts to show injury, and she therefore has standing to bring a claim under the FDCPA. *Accord Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1123 (D. Nev. 2008) (holding that the plaintiffs had standing to sue under the FDCPA where a debt collector continued to harass them at their home with automated phone calls directed to another person even after the plaintiffs informed the debt collector that the alleged debtor no longer owned the phone number at the plaintiffs' residence); *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, No. 99 Civ. 3227(JGK), 2000 WL 1448635, at *4 (S.D.N.Y. Sept. 28, 2000) ("Likewise, persons who have been

11

harmed by an 'improper debt practice' may also bring suit."); *Pittman v. J.J. Mac Intyre Co. of Nev., Inc.*, 969 F. Supp. 609, 613 (D. Nev. 1997) (finding that a plaintiff could sue under the FDCPA where collectors continued to mistakenly call her after she had paid her debt).

In any event, the legislative history of the FDCPA shows that Congress clearly intended to protect people subject to harassment by debt collectors as a result of mistaken identity, and the lynchpin is not, as Defendants suggest, whether the person being harassed is aware that she is not the true debtor. *See* S. Rep. No. 95-382, at 4 (1997), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699 (noting that one purpose of the FDCPA is to prevent debt collectors from "dunning the wrong person . . . ."). Indeed, to read the FDCPA in this manner would allow unscrupulous debt collectors, and particularly buyers of junk debt who cannot verify the accuracy of the debts or the identities of the debtors, to simply file debt collection actions with impunity against all persons having a similar name as the debtor, on the chance that one of the named defendants is the true debtor, or that one of the named defendants will simply pay the debt allegedly owed under the threat of having a judgment obtained against them, with a resulting levy against their property.[7]

---

[7] Indeed, in an effort to prevent this exact scenario, North Carolina recently passed legislation requiring debt buyers to attach written evidence of the original debt to a complaint and to provide certain types of proof of the debt owed by a named defendant in a lawsuit before obtaining a default judgment or summary judgment against a defendant for the debt allegedly owed. *See* N.C. GEN. STAT. §§ 58-70-115, 58-70-150, 58-70-155 (effective Oct. 1, 2009).

According to Plaintiff's allegations here, in the face of clear proof that Plaintiff did not owe the alleged debt, Defendants filed a lawsuit that was served on Plaintiff's residential address to a person with almost the exact name as Plaintiff. Drawing all inferences in the light most favorable to Plaintiff, it can be inferred that when Defendants filed the action and served the summons at Plaintiff's residential address, Defendants knew that Plaintiff was not the true debtor, but they took the chance that Plaintiff would simply acquiesce and pay the alleged debt. Of course, Defendants protest ad nauseam that the complaint was directed to a person other than Plaintiff, but they do not attempt to offer any explanation as to why they would deliberately serve the summons and complaint on an address that they knew did not belong to the true debtor. Again, drawing all inferences in favor of Plaintiff, the act of serving a complaint and summons to the address of a person with almost the exact same name as the true debtor, when the debt collector *knows* that the person is not the true debtor, is a false and deceptive representation of the legal nature of the debt and is therefore a violation of the FDCPA. Indeed, the circumstances here are more egregious than in a case in which a person simply continues to receive misdirected collection letters, since Defendants here went so far as to file a lawsuit in the face of clear proof that the true debtor did not live at the residential address

where the lawsuit was served. Such conduct appears to violate both the letter and spirit of the FDCPA.[8]

Of course, the FDCPA does not grant standing to any individual who merely happens to come across a debt collection letter. *See, e.g., Schwartz v. Resurgent Capital Servs., LP*, No. 08cv2533(NG)(RML), 2009 WL 3756600, at *3-4 (E.D.N.Y. Nov. 9, 2009) (where a collection letter was addressed to "Cynthia A. C/o Yitzchok Schwartz" and listed "Cynthia A." as the debtor, the plaintiff Yitzchok Schwartz, who received the letter at his residence, could not have reasonably construed the collection letter as an allegation that he was obligated to pay the debt in question); *Barasch v. Estate Info. Servs., LLC*, No. 07-CV-1693 (NGG)(MDG), 2009 WL 2900261, at *4 (E.D.N.Y. Sept. 3, 2009) ("Although Plaintiff claims that she read the debt collection letter and was harmed, no supporting facts [of the injury Plaintiff suffered by reading the communication] have been presented to the court."); *Prophet v. Myers*, Civil Action No. H-08-0492, 2009 WL 1437799, at *4 (S.D. Tex. May 21, 2009) (where a demand letter was sent to the residence of the plaintiff's son, who shared almost the same name as the plaintiff, finding that the plaintiff lacked standing to sue for a FDCPA violation, and stating that "sending a demand letter to

---

[8] If Defendants can show by a preponderance of the evidence that any violation of the FDCPA was unintentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error, then Defendants will not be held liable for a violation of the FDCPA. *See* 15 U.S.C. § 1692k(c) (bona fide error provision). It is too early in this stage of the proceedings, however, to determine whether the bona fide error provision applies.

an address where a purported FDCPA plaintiff never resided constitutes far less of a direct attempt to collect a debt than sending a demand letter to an address where a third-party, non-debtor actually lived, even if that demand letter was not addressed to the third party"). Where, however, an individual could reasonably construe a collection letter as an allegation that a debt collection agency is attempting to impose liability on the individual for the debt, or where the individual can otherwise show that she was injured by a debt collector's communications directed to a debtor, the individual may sufficiently state a claim for a violation of the FDCPA.

Finally, as for Defendants' contention that Plaintiff may not assert a claim for a violation of the FDCPA based on her allegation that the state court action was allegedly time-barred as to the true debtor Elaine E. Johnson, I find that Plaintiff has stated a claim against Defendants for a violation of the FDCPA even without considering the additional allegation that Defendants were trying to collect on a debt that was time-barred. Therefore, there is no need to address the alleged separate violation of the FDCPA based on Defendants' alleged attempt to collect on a time-barred debt or any other alleged misconduct by Defendants at this point in the proceedings. In sum, for the reasons stated herein, I will recommend that the court deny the motion to dismiss.

## V. Conclusion

For the reasons stated above, Defendants' motion to strike various paragraphs in the amended complaint (docket no. 19) is **DENIED**. Furthermore, **IT**

**IS RECOMMENDED** that the court **DENY** Defendants' motion to dismiss (docket no. 17). Finally, to the extent that a motion to dismiss the original complaint (docket no. 6) has also been referred to the undersigned, the docket should be amended to reflect that the motion has been rendered moot by the filing of the amended complaint, and it is no longer pending.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
January 11, 2010